**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **ARABIATU SIMAGA,** *et al.*, | : |
| | : |
| **Plaintiffs,** | : **Case No. 2:21-cv-5098** |
| | : |
| **v.** | : **Chief Judge Algenon L. Marbley** |
| | : |
| **UNITED STATES CITIZENSHIP &** | : **Magistrate Judge Kimberly A. Jolson** |
| **IMMIGRATION SERVICES,** *et al.*, | : |
| | : |
| **Defendants.** | : |

**OPINION & ORDER**

This matter is before this Court on the parties' cross Motions for Summary Judgment (ECF Nos. 17; 19). For the following reasons, Plaintiffs' Motion is **DENIED** (ECF No. 17) and Defendants' Motion is **GRANTED** (ECF No. 19).

## I.      BACKGROUND

Plaintiff Yusuph Karaga is a native and citizen of Gambia. (ECF No. 1, ¶ 9). He married Ms. Rokiyatou Touray, a U.S. citizen, in Gambia on May 1, 2009. (*Id.*, ¶ 16). Ms. Touray returned to the U.S. and filed an I-130 Petition for Alien Relative[1] ("I-130 Petition") for Mr. Karaga, who was admitted as a conditional resident on March 28, 2011. (*Id.*). After failing to find work in New York City where Ms. Touray lived, Plaintiffs allege that Mr. Karaga moved to Ohio. (*Id.*, ¶ 18). Ms. Touray remained in New York, and they divorced on March 28, 2013. (*Id.*, ¶¶ 18–19). On October 10, 2013, Mr. Karaga married Plaintiff Arabiatu Simaga, a U.S. citizen. (*Id.*, ¶¶ 1, 10). On April 28, 2014, United States Citizenship and Immigration Services ("USCIS") issued a notice

---

[1] This form is filed by a U.S. citizen or lawful permanent resident ("LPR") who wishes to establish their relationship as an immediate family member for a relative who is eligible to come to or remain in the United States permanently and obtain a Permanent Resident Card ("Green Card"). *I-130, Petition for Alien Relative*, USCIS (June 2023), https://www.uscis.gov/i-130.

terminating Mr. Karaga's conditional residency status for failure to file an I-751 Petition to Remove Conditions on Residence[2] ("I-751 Petition"). (*Id.*, ¶ 21).

On June 20, 2014, Ms. Simaga filed an I-130 Petition and Mr. Karaga filed an I-485 Petition to Register Permanent Residence or Adjust Status[3] ("I-485 Petition"). (*Id.*, ¶ 1). USCIS interviewed Plaintiffs, and then Ms. Touray about Mr. Karaga's first marriage. (*Id.*, ¶¶ 23–24). Ms. Touray explained that Mr. Karaga only married her to enter the U.S. legally and lived in New York for one week before moving to Ohio. (*Id.*, ¶ 24). Defendants allege that Plaintiffs' testimony to USCIS was replete with inconsistencies: (1) Mr. Karaga first stated that when he moved to Ohio he lived with his brother before they moved into a new apartment with Ms. Touray, but then testified that he lived in two different apartments prior to Ms. Touray arriving; (2) Mr. Karaga stated that Ms. Touray lived in Ohio for about a year and a half prior to the divorce, but subsequently alleged confusion and instead stated that he and Ms. Touray traveled back and forth from New York to see each other; (3) testimony that Ms. Touray lived in Columbus until November 2012 even though Mr. Karaga's divorce paperwork, finalized in March 2013, indicated that Ms. Touray and Mr. Karaga had been living separately for a year; (4) that Ms. Touray initiated the divorce, but Mr. Karaga filed the divorce in Ohio and Ms. Touray never appeared; (5) that Mr. Karaga submitted as evidence Ms. Touray's Facebook post dated July 6, 2012 stating "[t]he divorce went through. Sorry bro I know u wanted it to work out," five months prior to when Mr. Karaga stated that Ms. Touray moved out in November 2012; and (6) that the property manager at

---

[2] Conditional permanent residents who obtained lawful presence status through marriage file this Petition during the ninety-day period before conditional residence status expires. *I-751, Petition to Remove Conditions on Residence*, USCIS (June 2023), https://www.uscis.gov/i-751.

[3] This form is used to apply for lawful permanent resident status if the petitioner is already in the United States. *I-485, Application to Register Permanent Residence or Adjust Status*, USCIS (June 2023), https://www.uscis.gov/i-485.

Mr. Karaga's Columbus apartment stated that there was no evidence that Ms. Touray lived at the location. (ECF No. 19 at 3–9).

On October 22, 2015, although finding that Plaintiffs' marriage was bona fide, USCIS denied the I-130 Petition stating Mr. Karaga was an ineligible immediate relative pursuant to § 204(c) of the Immigration and Nationality Act ("INA") for previously marrying a U.S. citizen to evade immigration laws. (*Id.*, ¶ 2 (citing 8 U.S.C. § 1154(c)); ECF No. 15 at 7). On November 20, 2015, Mr. Simaga appealed to the Board of Immigration Appeals ("BIA") with an affidavit from Ms. Touray recanting and stating that they had married for love. (*Id.*, ¶ 28). On April 13, 2016, the BIA dismissed the petition, stating that it could not consider new evidence on appeal. (*Id.*, ¶ 29).

Mr. Karaga filed an I-751 Petition on April 23, 2016, alleging his first marriage was in good faith. (ECF No. 18 at 2). On May 25, 2017, USCIS issued a Notice of Intent to Terminate ("NOIT") because there was no explanation for the change in Ms. Touray's testimony. (ECF No. 1, ¶ 31). Mr. Karaga submitted a new affidavit from Ms. Touray that her original statements were driven by anger around the divorce, and that they had lived together for seven months prior to his move to Ohio. (*Id.*, ¶¶ 32–33). The I-751 Petition was denied on December 12, 2017, however, for inconsistencies in address history and entering the first marriage in bad faith. (*Id.*, ¶ 34).

In 2021, the U.S. Department of Homeland Security ("DHS") initiated removal proceedings against Mr. Karaga, who moved to terminate, alleging deficient notice. (ECF No. 11-2 at 2). That motion was granted, and the removal proceedings were terminated without prejudice on October 27, 2021. (*Id.* at 10). Notably, the Immigration Judge stated that the "decision [did] not preclude [DHS] from properly commencing proceedings pursuant to the issuance of a new notice to appear in compliance with the statutory requirements[.]" (*Id.*). DHS appealed that decision to the BIA, which, at the time of filing, remained ongoing. (ECF No. 11 at 4).

On October 21, 2021, Plaintiffs filed suit against the federal agencies involved in the denial of Mr. Karaga's I-175 and I-130 Petitions. (ECF No. 1). Plaintiffs allege this Court has jurisdiction over their claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201; 28 U.S.C. § 1361 as well as the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. (*Id.*, ¶ 7). On January 28, 2022, Defendants answered Plaintiffs' Complaint in part (ECF No. 10) and moved to dismiss Plaintiffs' claim regarding Mr. Karaga's I-175 Petition (ECF No. 11). On September 12, 2022, this Court granted Defendants' Motion and dismissed Mr. Karagas' I-751 Petition claim. (ECF No. 18).

On September 1, 2022, Plaintiffs filed a Motion for Summary Judgment on the I-130 Petition claim. (ECF No. 17). On October 14, 2022, Defendants responded with a cross Motion for Summary Judgment. (ECF No. 19). On January 13, 2023, after Plaintiff failed to respond, Defendants submitted a Notice of Non-Response to this Court arguing that Plaintiffs waived any response to Defendants' arguments. (ECF No. 20). Therefore, this matter is ripe for review.

## II.     STANDARD OF REVIEW

Whereas a motion for summary judgment pursuant to Fed. R. Civ. P. 56 requires a court to determine whether there are genuine issues of material fact, the "usual rules governing summary judgment do not apply" in cases brought pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 551, 553–59, 701–06. *Integrity Gymnastics & Pure Power Cheerleading, LLC v. U.S. Citizenship and Immigr. Servs.*, 131 F. Supp. 3d 721, 725 (S.D. Ohio 2015) (citing *City of Cleveland v. Ohio*, 508 F.3d 827, 838 (6th Cir. 2007)); *N. Carolina Fisheries Ass'n, Inc. v. Gutierrez*, 518 F. Supp. 2d 62, 78–79 (D.D.C. 2007)). Courts do not ask, for example, whether a genuine issue of material fact exists, as the court's review is limited to the administrative record and does not entail independent factfinding. *See Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1472 (9th Cir. 1994). Instead, courts must ask "whether or not as a matter of law the

evidence in the administrative record permitted the agency to make the decision it did." *Ohio Valley Env't Coal. v. Hurst*, 604 F. Supp. 2d 860, 879 (S.D. W.Va. 2009) (quoting *Sierra Club v. Mainella*, 459 F. Supp. 2d 76, 90 (D.D.C. 2006)). Summary judgment is often appropriate when "a party seeks review of agency action under the APA [because] the entire case on review is a question of law." *Noroozi v. Napolitano*, 905 F. Supp. 2d 535, 541 (S.D. N.Y. 2012) (internal quotation marks and citation omitted); *see also Pit River Tribe v. U.S. Forest Serv.*, 469 F.3d 768, 778 (9th Cir. 2006). Finally, the same standard of review applies when parties file cross-motions for summary judgment. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

## III.    STATUTORY FRAMEWORK

District courts have jurisdiction to review a decision on the merits of an I-130 Petition to classify an alien as a relative of a United States citizen. *Adi v. U.S.*, 498 Fed. App'x. 478, 480 (6th Cir. 2012) (citations omitted). Under the APA, federal courts review agency actions under the deferential "arbitrary and capricious" standard of review. *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 377 (1989); 5 U.S.C § 706(2)(A). A decision is deemed "arbitrary and capricious" if:

> [T]he agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Meister v. U.S. Dep't of Agric.*, 623 F.3d 363, 371 (6th Cir. 2010) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983)). Although courts must conduct a "searching and careful" inquiry as to "whether the [agency] decision was based on consideration of the relevant factors and whether there has been a clear error of judgment," *id.* at 378 (quoting *Bowman Transp., Inc. v. Ark.-Best Freight Sys.*, 419 U.S. 281, 285 (1974); *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)), it is not the role of the

reviewing court to "substitute its judgment for that of the agency." *Integrity Gymnastics*, 131 F. Supp. 3d at 726 (citing *Marsh*, 490 U.S. at 376; *Simms v. Nat'l Highway Traffic Safety Admin.*, 45 F.3d 999, 1003 (6th Cir. 1995)); *see also Alaska Dep't of En't Conservation v. EPA*, 540 U.S. 461, 497 (2004) (explaining that "[e]ven when an agency explains its decision with 'less than ideal clarity,' a reviewing court will not upset the decision on that account 'if the agency's path may reasonably be discerned.'"); *Anglers of the Au Sable v. U.S. Forest Serv.*, 565 F. Supp. 2d 812, 821 (E.D. Mich. 2008) ("Because analysis of the relevant documents 'requires a high level of technical expertise,' the Court must defer to 'the informed discretion of the responsible federal agencies.'" (quoting *Kleppe v. Sierra Club*, 427 U.S. 390, 412 (1976))). Judicial review is confined to ensuring that "the agency adequately studied the issue and took a hard look." *Klein v. U.S. Dep't of Energy*, 753 F.3d 576, 580 (6th Cir. 2014). The "hard look" standard is satisfied as long as the agency "considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action." *Integrity Gymnastics*, 131 F. Supp. 3d at 726 (quoting *Noroozi*, 905 F. Supp. 2d at 541).

## IV. LAW & ANALYSIS

### A. Administrative Procedures Act

#### 1. Finality

To state a claim under the APA, plaintiffs "must allege that [their] injury stems from a final agency action for which there is no other adequate remedy in court." *Jama v. Dep't of Homeland Sec.*, 760 F. 3d 490, 495 (2014) (quoting *Bangura v. Hansen*, 434 F. 3d 487, 500 (6th Cir. 2006) (citing 5 U.S.C. § 704)). To determine whether an agency action is final the court must assess whether the: (1) action marks "the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature"; and (2) "the action must be one by which

6

'rights or obligations have been determined,' or from which 'legal consequences will flow.'" *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). An agency action is not final if it "does not of itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action." *Rochester Tel. Corp. v. United States,* 307 U.S. 125, 130 (1939).

Decisions by the BIA are "final agency determinations for purposes of judicial review." *Marikasi v. Lynch*, 840 F.3d 281, 286–87 (6th Cir. 2016) (quoting *Gaye v. Lynch*, 788 F. 3d 519, 526 (6th Cir. 2015)). There is no higher administrative agency to which Plaintiffs can appeal their decision. Further, following the BIA's decision, removal proceedings were commenced against Mr. Karaga. Although the proceedings were vacated due to a notice issue, USCIS can commence those proceedings again. Therefore, the administrative exhaustion requirement has been met.

### 2. *Arbitrary & Capricious*

#### a. *Parties' Arguments*

Plaintiffs allege that USCIS's denial of the I-130 Petition was arbitrary and capricious because its findings rest solely on Ms. Touray's affidavit and Mr. Karaga's failure to remember his address history—failing to meet the "substantive and probative evidence" standard. (ECF No. 17 at 8). They maintain that Ms. Touray's testimony is internally inconsistent, further undermining USCIS's reliance on the record. (*Id.* at 11). Plaintiffs challenge the conclusion that Mr. Karaga mislead USCIS and allege that the inconsistent statements he provided were the result of exhaustion and confusion, not deception. (*Id.* at 13). Plaintiffs argue that the property manager's testimony that Ms. Touray did not live in Ohio was unreliable when there is no evidence that Mr. Karaga, himself, was on the Maize Road apartment lease. (*Id.*). This evidence, according to Plaintiffs, amounts only to an inference of wrongdoing, but is insufficient to meet the substantive and probative requirement. (*Id.* at 15). Therefore, Plaintiffs argue that they were not required to

7

show in the affirmative that the marriage was *not* a sham, but simply by a preponderance of the evidence, that the marriage was entered into in good faith. (*Id.* at 6).

Defendants argue that the administrative record contains substantial and probative evidence that Mr. Karaga married Ms. Touray for the purpose of evading immigration laws because: (1) there were significant discrepancies between their testimony; and (2) no evidence that the couple had a life together. (ECF No. 19 at 15). Defendants claim that when confronted with the discrepancies in his testimony, Mr. Karaga changed his testimony, claiming confusion—which Defendants argue demonstrates an attempt to defraud. (*Id.* at 17). Instead of submitting evidence to rebut USCIS's findings in the NOID, Defendants argue that the evidence Plaintiffs submitted focused almost entirely on Mr. Karaga's second marriage and did not explain the inconsistencies in his testimony about his first marriage. (*Id.* at 19). Specifically, USCIS stated that it could not consider Ms. Touray's Facebook post because its timing did not match up with the divorce or Mr. Karaga's testimony about when he and Ms. Touray lived together. (*Id.*). Overall, Defendants claim Plaintiffs mischaracterize and minimize the evidence on which USCIS made its denial decision. (*Id.* at 20). Finally, Defendants allege that Plaintiffs' Motion wrongfully seeks from this Court a *de novo* review of USCIS's findings. (*Id.*).

### b.  Court's Analysis & Findings

When an I-130 Petition is "filed based on marriage, the petitioner must show by a preponderance of the evidence that the marriage was *bona fide* at its inception, *i.e.*, that the couple intended to establish a life together at the time they got married." *Sholanke v. U.S. Citizenship & Immigr. Servs.*, No. 1:18-cv-1929, 2020 WL 1452449, at * 4 (N.D. Ohio Mar. 25, 2020) (quoting *Haddad v. Napolitano*, No. 1:13-cv-1028, 2014 WL 11309, at * 3 (W.D. Mich. Dec. 31, 2014)); *Matter of Soriano*, 19 I. & N. Dec. 764, Interim Decision 3081 (BIA 1988) (same). The *bona fides*

may be established through proof "that the beneficiary has been listed as the spouse on the petitioner's insurance policies, property leases, income tax forms, or bank accounts, and by testimony from others regarding the couple's wedding, residence, and shared experiences." *Gadzhieva v. Lynch*, No. 2:15-cv-2651, 2017 WL 11457230, at *1 (S.D. Ohio July 20, 2017) (citing *In re Laureano*, 19 I. & N. Dec. 1, 3 (BIA 1983); 8 C.F.R. § 103.2(b)(1)). Section 204(c) of the INA, 8 U.S.C. § 1154(c), however, bars approval of an I-130 Petition on behalf of an alien spouse who USCIS determines has "attempted or conspired to enter into a marriage for the purposes of evading immigration laws"—in other words, marriage fraud. INA § 204(c). Even if the marriage upon which the I-130 Petition is based is bona fide, INA § 204(c) bars approval of any subsequent visa petition on behalf of the same beneficiary if a finding of marriage fraud is made. *In re Tawfik*, 20 I. & N. Dec. 166, 167 (BIA 1990).

A determination of marriage fraud made pursuant to § 204(c) must be supported by substantial and probative evidence. *In re Agdinaoay,* 16 I. & N. Dec. 545, 546 (BIA 1978); *In re Tawfik,* 20 I. & N. Dec. 166, 167 (BIA 1990), 8 C.F.R. § 204.2(a)(ii). If "substantial and probative" evidence of marriage fraud is found, the burden shifts back to the petitioner to rebut the evidence. *In re Kahy*, 19 I. & N. Dec. 803, 806–07 (BIA 1988). The petitioner must "resolve the inconsistencies by independent objective evidence. Attempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing . . . [to] the truth . . . will not suffice." *Matter of Ho*, 19 I. & N. Dec. 582, 591–92 (BIA 1998) (petitioner's new affidavit addressing the inconsistencies in investigation sought only to alter the testimony, so the BIA could not rely on it as objective, credible evidence); 8 C.F.R. § 103.2(b)(2) ("The non-existence or other unavailability of required evidence creates a presumption of ineligibility.").

First, in cases brought under the APA, the court "review[s] the whole record or those parts of it cited by a party." 5 U.S.C. § 706. This Court's review is limited to the administrative record including all material compiled by the agency at the time the decision was made. *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997). A court may reverse an agency finding only if "the evidence not only supports that conclusion but compels it." *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992). Plaintiffs point to two of Ms. Touray's later affidavits which recant her previous assertion that her marriage to Mr. Karaga was in bad faith to argue that USCIS failed to consider all evidence. The BIA, however, cannot consider new evidence on appeal, and is limited to the record of the proceedings before USCIS. *Matter of Soriano*, 19 I. & N. Dec. 764, 766 (BIA 1988) ("Where, however, the petitioner was put on notice of the required evidence and given a reasonable opportunity to provide it for the record before the denial, we will not consider evidence submitted on appeal."). Therefore, Ms. Touray's testimony was not internally inconsistent, as USCIS, the BIA, and this Court can only make an assessment based on the facts in the record provided to USCIS originally. Therefore, this Court is limited to considering Ms. Touray's original affidavit saying the marriage was entered into in bad faith. (ECF Nos. 1-2 at 15–16; 13 at 104).

Second, the denial of Plaintiffs' petition was not arbitrary and capricious. The BIA recently clarified that substantial and probative evidence of marriage fraud is evidence that "must establish that it is more than probably true that the marriage is fraudulent." *Matter of Singh*, 27 I. & N. Dec. 598, 607 (BIA 2019). Here the agency found that Plaintiffs failed to meet the burden of proof to establish that Mr. Karaga's marriage to Ms. Touray was a *bona fide* relationship. *See Matter of Kitsalis*, 11 I. & N. Dec. 613, 614 (BIA 1996) ("Where no bona fide husband-wife relationship is intended, the marriage is deemed invalid for immigration purposes regardless of whether it would be considered valid under the domestic law of the jurisdiction where performed."). Plaintiffs failed

to provide USCIS with any affirmative evidence that would demonstrate shared property, residence, experiences, or relationship between Ms. Touray and Mr. Karaga. *See In re Laureano*, 19 I. & N. Dec. at 3 (explaining that the burden rests on the I-130 petitioner to provide evidence of the *bona fides* of the marriage at issue in the form of shared property, residence, or experiences). The agency's decision was not based only on failure to remember addresses, but other substantive evidence of inconsistencies in testimony and attempts to alter testimony.

On the issue of Ms. Touray and Mr. Karaga's living situation, Ms. Touray stated that Mr. Karaga only lived with her for one week in New York prior to moving to Ohio and that she never moved to Ohio. This is directly in conflict with Mr. Karaga's initial testimony that Ms. Touray lived with him in Ohio for over a year. Additionally, Mr. Karaga's initial testimony conflicted directly with his divorce decree issued by the state of Ohio. The divorce decree, finalized in March 2013, stated that the parties had lived apart for one year, while Mr. Karaga testified that Ms. Touray moved out in November 2012. Plaintiffs further attempt to undermine the record by arguing that USCIS should not have relied on the interview with the Columbus apartment property manager who denied seeing Ms. Touray on the property because neither Mr. Karaga nor Ms. Touray were listed on the lease. This argument is the opposite of affirmative evidence as it fails to demonstrate any shared property. These inconsistencies are of the type that courts find constitute substantial evidence of marriage fraud. *Sholanke*, 2020 WL 1452449, at *7 (finding that petitioner and beneficiary's conflicting testimony about where they lived together, and the nature of their relationship constituted substantial evidence to support denial of I-130 petition).

Further, the agency did not act in an arbitrary and capricious manner when it did not rely on: (1) Mr. Karaga's change in testimony that he and Ms. Touray never lived together but traveled back and forth to see one another; and (2) Ms. Touray's Facebook post about the divorce. The

11

burden of proof for reconciling inconsistencies is high: "[a]ttempts to explain or reconcile the conflicting accounts, absent competent objective evidence pointing . . . [to] the truth . . . will not suffice." *Matter of Ho*, 19 I. & N. Dec. at 591–92; 8 C.F.R. § 103.2(b)(2) ("The non-existence or other unavailability of required evidence creates a presumption of ineligibility."). Assuming arguendo that Mr. Karaga and Ms. Touray had a *bona fide* relationship, Plaintiffs' evidence focused on their marriage and included no documentation—whether travel documents or affidavits of family and friends—to support Mr. Karaga's assertion that he and Ms. Touray maintained a long-distance relationship. The Facebook post is also unreliable evidence because the statement preceded, by about nine months, the finalization of the divorce according to state documents.

Direct evidence of fraud is not required for USCIS to conclude marriage fraud. *Sholanke v. USCIS*, 854 Fed. App'x 23, 27 (6th Cir. 2021). The absence of any evidence of a joint life and inconsistencies about the joint life Mr. Karaga purported to have with Ms. Touray, alone, is sufficient substantial and probative evidence on which USCIS could base its decision. *See Matter of Singh*, 27 I. & N. Dec. at 608 (finding that on the issue of marriage fraud, "neither the statute, the regulation, nor [the BIA's] precedent prohibits [the BIA from] relying on circumstantial evidence, which alone may be sufficient to constitute substantial and probative evidence of marriage fraud under 204(c)."). USCIS's denial is further supported by the fact that Mr. Karaga only changed his testimony when confronted by USCIS, implying an attempt at deliberate deception. *Sholanke II*, 854 Fed. App'x at 27 ("[E]vidence of deliberate deception regarding cohabitation 'strongly indicate[s] fraud.'" (quoting *Matter of Singh*, 27 I. & N. Dec. at 609)).

The decisions by both USCIS and the BIA supplied Plaintiffs with a reasoned explanation of why the evidence indicated that Mr. Karaga and Ms. Touray's marriage was fraudulent. *See Bangura*, 434 F. 3d 487 at 503 (finding that INS denial of I-130 Petition was not arbitrary and

capricious because it gave petitioner reasoned explanation based on evidence that the parties did not live together, did not own joint property, and the divorce certificate from the first marriage was fraudulent). Therefore, Plaintiffs present insufficient evidence that Defendants acted wrongfully, and this Court can conclude that "as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Ohio Valley Env't Coal*, 604 F. Supp. 2d at 879 (quoting *Sierra Club*, 459 F. Supp. 2d at 90). As such, Plaintiffs' Motion is **DENIED**, and Defendants' Motion is **GRANTED** as to the APA claim.

## B. Constitutional Claims

### 1. Parties' Arguments

Plaintiffs allege that they have a protected property interest in the I-130 Petition. Plaintiffs argue that the non-discretionary language in INA § 204(b) that the Attorney General "shall . . . approve the [I-130] petition" where facts of the relationship are true, demonstrates that Congress intended to create a property interest in the I-130 Petition. (ECF No. 17 at 15 (citing *Ching v. Mayorkas*, 725 F. 3d 1149, 1153–54 (9th Cir. 2013)). Because the United States Supreme Court found that benefits are a "statutory entitlement for persons qualified to receive them," Plaintiffs argue that they are entitled to the benefit—leaving USCIS with no discretion to deny the petition—because their marriage is *bona fide* and USCIS does not have sufficient evidence to find marriage fraud. (*Id.* at 17 (citing *Goldberg v. Kelly*, 397 U.S. 254 (1970)), 19–21). Plaintiffs maintain that USCIS's decision based on a lack of sufficient evidence violates their own regulations resulting in a due process violation against Plaintiffs. (*Id.* at 22). Specifically, Plaintiffs argue that USCIS's reliance on Ms. Touray's vindictive statements, interview with Mr. Karaga's former property manager, and Mr. Karaga's confusion over his address history did not provide Plaintiffs with adequate notice of what evidence was necessary to meet the requirements of the statute. (*Id.* at 25–

13

29). Plaintiffs maintain that the risk of erroneous deprivation is high in this case as Mr. Karaga could be removed from both his wife and children, and they ask that this Court enforce USCIS's regulations and provide additional procedures. (*Id.* at 29 – 30).

Defendants respond that Plaintiffs do not have a protected property interest in the adjudication of an I-130 Petition, despite establishing the *bona fides* of their marriage. (ECF No. 19 at 24). Defendants argue that § 204 of the INA does not grant Plaintiffs any entitlement until after the marriage fraud analysis is concluded, and therefore, the pre-deprivation process under the Fifth Amendment's Due Process Clause is not triggered. (*Id.* at 25). Defendants argue that the I-130 Petition only classifies the beneficiary as an immediate relative, but the beneficiary must still apply for a visa or adjustment of status—a separate step to obtain a benefit. (*Id.* at 26). Second, Defendants allege that USCIS made no procedural errors, provided Plaintiffs the opportunity to respond to the NOID, and provided a de novo review of the case on appeal. (*Id.* at 28).

### 2. Court's Analysis & Findings

Plaintiffs assert that an I-130 Petition is an entitlement because 8 U.S.C. § 1154(b) (INA § 204(b)) does not give USCIS discretion to deny these petitions where petitioners and the beneficiaries are immediate relatives, the facts in the petition are true, and the parties do not enter into the marriage for the purposes of evading immigration laws. (ECF No. 17 at 19–21). First, "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it . . . more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 748, 756 (1972). Supreme Court "cases recognize that a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Town of Castle Rock v. Gonzales,* 545 U.S. 748, 756 (2005). Instead, "[a] reasonable expectation of entitlement is determined largely by the language of the

statute and the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges of Cal., Inc. v. City of Phoenix,* 24 F.3d 56, 62 (9th Cir. 1994) (internal quotation marks omitted).

Plaintiffs' argument revolves around *Ching v. Mayorkas* where the Ninth Circuit concluded that a man and his alien spouse had a due process-protected interest in their I-130 Petition because the grant of the petition was nondiscretionary. 725 F. 3d at 1156. Teresita Ching, the beneficiary and a Filipino national, and Brooke Joseph, a U.S. citizen, filed an I-130 on Ching's behalf following their marriage. *Id.* at 1153. USCIS interviewed Ching's first husband, Elden Fong, also a U.S. citizen, who stated that he and Ching did not marry for love, he was paid for the marriage, he and Ching never consummated the marriage, and they never lived together. *Id.* In response, Ching provided an extensive, sworn declaration describing in "excruciating detail her intimate relationship with Fong." *Id.* USCIS denied the I-130 Petition, and the BIA upheld the decision, concluding that Ching's first marriage was a sham. Ching and Joseph sued USCIS in federal court alleging violation of the APA and the Due Process Clause by denying them the opportunity to cross examine Fong. *Id.* at 1154. Given § 204(b)'s nondiscretionary language, the Ninth Circuit held that the I-130 Petition is a "right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility." *Id.* at 1156. Therefore, Ching should have been able to cross examine Fong, especially where his testimony could be motivated by "malice, vindictiveness, intolerance, prejudice, or jealousy." *Id.* (quoting *Greene v. McElroy*, 360 U.S. 474, 496–97 (1959)).

While this Court recognizes Plaintiffs' fundamental right to marry, it is well established that "[t]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in the country." *Bangura*, 434 F. 3d at 496 (citing *Almario v. Attorney General*, 872 F. 2d 147, 151 (6th Cir. 1989)). Further, the Sixth Circuit has held that an alien spouse has no

protected interest in an I-130 Petition. *Wright v. INS*, 379 F. 2d 275, 276 (6th Cir. 1967). Contrary to Defendants' assertion, however, while the Sixth Circuit rejected a procedural due process claim predicated on the right to marry, *see Almario*, 872 F. 2d at 151 (rejecting plaintiffs' argument that 8 U.S.C. § 1154(h), which requires an alien who marries a U.S. citizen while in deportation proceedings to live outside the U.S. for two years before the alien's spouse can apply for an immediate relative visa, infringed on plaintiffs' due process rights), the Sixth Circuit has yet to address whether the I-130 Petition creates a property interest protected by the Due Process Clause for the citizen spouse. *Bangura*, 434 F. 3d at 496. First, as it pertains to the at-issue statute, the Sixth Circuit has ruled that the use of the word "shall" in the statute governing I-130 Petitions does not provide discretion to USCIS on whether to grant an I-130 petition. *Adi*, 498 Fed. App'x at 480–81.[4] Second, in *Bangura*, the Sixth Circuit acknowledged that there was substantial evidence to support the proposition that the I-130 Petition created an interest to which procedural due process rights attached, as Supreme Court precedent has long held that nondiscretionary statutes create property interests for the purpose of procedural due process. *Id.* at 496 n. 2 (citing *Roth*, 408 U.S. at 577). Therefore, while *Ching* is not controlling over this Court, in combination with the Sixth Circuit's related rulings, this Court is led to logically conclude that the nondiscretionary nature of INA § 204(b) creates a protected procedural due process right in I-130 Petitions for the citizen, petitioner spouse—here Ms. Simaga—where the petitioner and beneficiary meet the statutory and regulatory requirements for eligibility.

Further, Defendants argue that Plaintiffs do not have a property right subject to procedural due process protections because § 204(c) requires Plaintiffs to demonstrates that the current and

---

[4] It should be noted that this decision, however, related to whether the district court had jurisdiction to hear an appeal from the BIA, as discretionary decisions by the Attorney General were typically not subject to judicial review, *see id.*, and did not address the § 204(c) exception for marriage fraud.

prior marriage were entered into in good faith. While § 204(c) mandates denial where there is evidence of marriage fraud, eligibility requirements do not eliminate a right to obtain a I-130 Petition. *See Roth*, 408 U.S. at 577 (explaining that "the welfare recipients in *Goldberg v. Kelly* [397 U.S. 254] had a claim of entitlement to welfare payments that was grounded in the statute defining eligibility for them. The recipients had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so."). Therefore, because of the property right a petitioner holds in an I-130 Petition, due process requires an opportunity for the petitioner to demonstrate eligibility.

Plaintiffs further allege that they were provided insufficient procedural protections through the adjudication of their I-130 Petition. The Fifth Amendment prevents the government from depriving persons of "life, liberty, or property, without due process of law." U.S. CONST. AMEND. V. Due process rights attach only when a plaintiff asserts a liberty or property interest granted by the Constitution, a federal statute, or a state statute. *Abdulla v. Cuccinelli*, 840 Fed. App'x 827, 840 (6th Cir. 2020) (citing *Bangura*, 434 F.3d at 496). Due process "is flexible and calls for such procedural protections as the particular situation demands." *Unan v. Lyon*, 853 F.3d 279, 291 (6th Cir. 2017) (quoting *Rosen v. Goetz*, 410 F.3d 919, 928 (6th Cir. 2005)). To succeed on a procedural due process claim, a plaintiff must show that: (1) he or she was deprived of a protected liberty or property interest, and (2) the "deprivation of that interest contravened notions of due process." *Thomas v. Cohen*, 304 F.3d 563, 576 (6th Cir. 2002). Courts consider three factors to determine whether due process was adequately provided: (1) a private interest will be impacted by the official action; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) the government's interest in the matter, including fiscal and administrative burdens that

17

the additional or substitute procedural requirements would entail. *Qing Tian v. United States*, No. 1:15-cv-264, 2017 WL 2964910, at *5 (S.D. Ohio July 12, 2017) (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Relatedly, the Sixth Circuit has stated that in immigration removal or deportation proceedings an individual must also show that he was prejudiced by lack of procedural due process to establish a constitutional violation. *El Mokhamad v. Kelly*, 2018 WL 488953, at *4 (E.D. Mich. Jan. 19, 2018) (citing *Warner v. Ashcroft*, 381 F.3d 534, 539 (6th Cir. 2004)).

Factor one of the *Mathews* test—the private interest that will be affected by the official action—favors Ms. Simaga. Without approval of Plaintiffs' I-130 Petition, Mr. Karaga faces removal from the United States which poses immense hardship to Ms. Simaga and her children.

Factor two—risk of erroneous deprivation and value of additional procedural safeguards— however, weighs in favor of Defendants. Unlike in *Ching*, the risk of erroneous deprivation is low because Plaintiffs have failed to present substantial evidence that the first marriage was *bona fide*. And when offered the opportunity to rebut USCIS's conclusion, Plaintiffs failed to provide any compelling rebuttal evidence, but instead focused their evidence on Plaintiffs' marriage. Again, unlike in *Ching*, here USCIS relied on evidence other than Ms. Touray's sworn statement in making its marriage fraud determination, namely Plaintiffs inconsistent testimony and the parties' divorce decree. *Cf. Ching*, 725 F. 3d at 1158 (finding risk of erroneous deprivation was high because visa petitioner had substantial evidence that first marriage was bona fide, including bills, leases, evidence of living together, and evidence of intimate conversations).

As it pertains to the probative value of additional procedural safeguards, Plaintiffs argue that USCIS failed to follow its own regulations when adjudicating the petition. Contrary to Plaintiffs' characterization, however, USCIS followed the required steps and Plaintiffs received

18

the process provided to it by statute and regulation.[5] In its NOID, USCIS presented extensive detail regarding the type of evidence that supports a petitioner's assertion that they have entered into a bona fide marriage. (*See* ECF no. 13 at 90 – 91 (stating that while evidence to establish good faith intent of marriage can vary, examples include "proof that the beneficiary has been listed as the petitioner's spouse on insurance policies, property leases, income tax forms, or bank accounts; and testimony or other evidence regarding courtship, wedding ceremony, shared residence, and experiences."). Plaintiffs submit this exact type of documentary evidence proving the bona fide nature of their marriage. The NOID, however, also detailed what evidence USCIS relied on to determine that Mr. Karaga's first marriage was entered into in bad faith. Yet, Plaintiff submitted barely any evidence to rebut that conclusion. Further, in its denial USCIS listed all the evidence submitted by Plaintiffs and provided a thorough explanation of why the submitted evidence still failed to prove Plaintiffs' case. (*Id.* at 19–23).

The BIA similarly provided a thorough explanation of why the new evidence submitted on appeal was unreliable and reaffirmed the conclusion that the evidence demonstrates the validity of Plaintiffs' marriage, not Mr. Karaga's marriage with Ms. Touray. (*Id.* at 12–13). The Sixth Circuit has found that all these steps constitute sufficient process when USCIS and the BIA adjudicate I-130 Petitions. *Abdulla*, 840 Fed. App'x at 840 (concluding that USCIS listing each piece of evidence submitted and explaining why each failed to meet petitioner's showing of eligibility and the BIA offering a fully reasoned explanation for its dismissal of petitioner's appeal was sufficient process under the due process clause for the adjudication of an I-130 Petition). In sum, Plaintiffs

---

[5] Noting that 8 C.F.R. § 103.2(b)(8)(iv) states: "A . . . notice of intent to deny will be in writing and will specify the type of evidence required, and whether initial evidence or additional evidence is required, or the bases for the proposed denial sufficient to give the applicant or petitioner adequate notice and sufficient information to respond. The . . . notice of intent to deny will indicate the deadline for response, but in no case . . . shall the maximum response time provided in a notice of intent to deny exceed thirty days. Additional time to respond to a . . . notice of intent to deny may not be granted." And 8 C.F.R. § 103.2(b)(16)(i) states: that an individual receiving a NOID has the "opportunity to rebut the information and present information on his/her own behalf before the decision is rendered."

had "notice reasonably calculated to provide actual notice of the proceeding[s] and a meaningful opportunity to be heard." *Cabrera-Ramos v. Gonzales*, 233 Fed. App'x 449, 453 (6th Cir. 2007) (citing *Nazarova v. INS*, 171 F.3d 478, 482–83 (7th Cir. 1999)).

Plaintiffs argue that USCIS's reliance on Ms. Touray's affidavit without giving "Plaintiffs an opportunity to confront and cross-examine her, and where [Ms. Touray] recant[ed] some of her statement herself" was a violation of their due process rights. (ECF No. 17 at 29). As explained *supra*, however, USCIS did not base their decision solely on Ms. Touray's statement, but other objective evidence and the complete lack of evidence that Ms. Touray and Mr. Karaga shared a life together. *See Alabed v. Crawford*, 691 Fed. App'x 430, 432 (9th Cir. 2017) (finding that risk of erroneous deprivation was low because USCIS based marriage fraud decision on evidence other than a former spouse's sworn statement and lack of compelling rebuttal evidence). Plaintiffs point to the fact that Ms. Touray later recanted as evidence that her first affidavit was motivated by malice. But BIA precedent explains that the burden of proof for reconciling inconsistencies is high and requires objective evidence of the truth. *Matter of Ho*, 19 I. & N. Dec. at 591–92. The Sixth Circuit rejects I-130-related due process claims where the petitioner and beneficiary received sufficient process—in other words, where USCIS complied with its own adjudication regulations. *Abdulla*, 840 Fed. App'x at 840 ("Whatever protected liberty or property interests Abdulla may have . . . Abdulla's due process claim fails because he received sufficient process" because USCIS followed its regulatory procedures providing for notice and opportunity to respond).

Even if Plaintiffs cross examined Ms. Touray and she recanted, it still would not correct the inconsistencies in Mr. Karaga's own testimony, the timeline conflicts with the Ohio divorce decree, and the lack of evidence that Mr. Karaga and Ms. Touray had a life together. Therefore, this factor weighs in favor of Defendants.

Finally, this Court considers the government's interest. This Court acknowledges that the additional procedure of having a hearing would be neither a substantial fiscal nor administrative burden because this process is provided already to aliens in removal proceedings. *See* INA § 204(b), 8 U.S.C. § 1229a(b)(4) ("[T]he alien shall have a reasonable opportunity to examine the evidence against the alien, to present evidence on the alien's own behalf, and to cross-examine witnesses presented by the Government."). This portion of factor three, however, remains largely neutral as additional procedure, in this specific case, is duplicative of the opportunity already provided to Plaintiffs to rebut Ms. Touray's testimony. Additionally, the Sixth Circuit has long held that the government has a legitimate federal interest in preventing immigration fraud. *Bangura*, 434 F. 3d at 495. Because the Sixth Circuit regularly concludes that the regulatory procedures already in place for adjudicating I-130 petitions provide fair notice and opportunity to respond, this factor weighs in favor of the Government.

Despite this Court's finding that Ms. Simaga has a property interest in the I-130 Petition, Plaintiffs' due process challenge must fail. Therefore, this Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiffs' due process claim and **DENIES** Plaintiffs' Motion for Summary Judgment as to the same claim.

## V.      CONCLUSION

For the reasons stated more fully above, Plaintiffs' Motion is **DENIED** (ECF No. 17) and Defendants' Motion is **GRANTED** (ECF No. 19). This case is **DISMISSED**.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: August 14, 2023**